United States District Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| C.M. on his own behalf and on behalf of his minor child, D.V., | |
| Plaintiffs, | |
| v. | Case No. SA-21-CV-00234-JKP-ESC |
| United States of America, | |
| Defendant. | |

**Reply in Support of United States' Motion to Dismiss**

Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As discussed below, Congress has not waived sovereign immunity for the types of claims asserted in this action. As such, the claims are jurisdictionally barred. In addition, Plaintiffs fail to state a claim upon which relief may be granted. Accordingly, to the extent the Court exercises jurisdiction over Plaintiffs' claims, they should be dismissed for failure to state a claim under Texas law.

I.      **Plaintiffs' Claims Are Barred by the Discretionary Function Exception.**

In its opening brief, the United States demonstrated that the Court lacks subject matter jurisdiction over this case because Plaintiffs' claims are barred by the discretionary function exception ("DFE"), 28 U.S.C. § 2680(a).  In their brief in opposition to this Motion, the Plaintiffs have not offered a persuasive argument that the DFE does not apply.

A.      **Plaintiffs do not rebut that the Government's decisions on prosecution, detention, separation, and conditions of confinement involved discretionary judgments.**

After attempting to enter the United States illegally, C.M. was charged with violating 8 U.S.C. § 1325, pled guilty, and was sentenced to 25 days of imprisonment.  After completing his sentence, he was transferred to the custody of ICE pursuant to his order of expedited removal and held in adult detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) & (iii)(IV) until he was removed from the United States.  *See* Compl. ¶ 2 (alleging asylum-seeking status).  Because C.M.'s prosecution rendered D.V. an unaccompanied minor under 6 U.S.C. § 279(g)(2), D.V. was transferred to the custody of ORR for the duration of C.M.'s sentence and subsequent mandatory detention pending removal, as required by 8 U.S.C. § 1232(b) & (c).  Prior to C.M.'s removal, he was reunited with D.V., and they were jointly repatriated to Honduras.

In their Opposition, Plaintiffs contend that they are not challenging the Government's decisions to prosecute C.M. for illegal entry or to incarcerate him while he served his 25-day sentence.  *See* Pls. Resp. at 23–24.  Nor do they dispute the Government's authority to detain noncitizens pending immigration proceedings or to arrange for appropriate places of detention pending removal or decision on removal.  *Id*. at 24.  And Plaintiffs do not contest the Government's discretion to detain C.M. in a secure adult immigration facility pending his expedited removal.  Instead, Plaintiffs contend that they are only challenging the "separation" of

C.M. and D.V., *id.*, and insist that the United States is "mischaracterizing [their] core claim" by defending its decisions to prosecute and securely detain C.M.  *Id.* at 23.

However, Plaintiffs' separation was the direct product of the Government's decisions to prosecute C.M. and to hold him in a secure immigration facility where children could not lawfully be kept.  Given that, Plaintiffs cannot avoid the DFE by reframing their claims to allege that they are solely "based upon" one action (*i.e.*, the separation of C.M. and D.V.) rather than another (*i.e.*, the prosecution and secure detention of C.M. and transfer of D.V.), when the latter (which is unchallenged) directly caused the former.  *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3d Cir. 1995) (en banc) ("We know of no authority for the proposition that plaintiffs, by the manner in which they draft their complaints, may dictate that their claims are 'based upon' one government employee's actions and not another's.").

Finally, in its opening brief, the United States demonstrated that Plaintiffs' allegations regarding the conditions of their confinement are barred by the DFE.  *See* Def. MTD at 25–26. Plaintiffs do not address this issue in their Opposition and therefore have abandoned any argument that their conditions of confinement are not barred by the DFE.  *See In re Matter of Dallas Roadster, Ltd.,* 846 F.3d 112, 126 (5th Cir. 2017) (plaintiffs abandoned malicious civil prosecution claim by failing to address it in opposition to motion to dismiss); *Black v. North Panola School Dist.*, 461 F.3d 584, 588, n.1 (5th Cir. 2006) (plaintiff's failure to address retaliation claim in response to motion to dismiss "constituted abandonment").

### B.    Plaintiffs' allegations of constitutional violations do not overcome the DFE.

In its opening brief, the United States cited Supreme Court authority contradicting Plaintiffs' contention that allegedly unconstitutional conduct is never protected by the DFE.  *See* Def. MTD at 28 (discussing *Butz v. Economou,* 438 U.S. 478 (1978)).  In *Butz*, the Court held that Executive Branch officials exercising discretionary functions were entitled to only qualified

immunity from liability for constitutional violations. *Id.* at 505. The Court explained that if such officials enjoyed absolute immunity, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id*. *Butz* therefore confirms that at least some conduct that violates the Constitution constitutes "an abuse of discretion" that nevertheless falls within the scope of the DFE. *See id.* at 505 n.33. Plaintiffs do not respond to that analysis.

Plaintiffs' Opposition also does not confront the settled rule that a directive can remove discretion under the first prong of the DFE analysis only if it is specific—so specific that it leaves the government actor "no room for choice." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Before a directive will preclude the DFE from applying, the Supreme Court's *Gaubert* decision requires that the directive "specifically prescribe a course of action for an employee to follow[.]" *Gaubert,* 499 U.S. at 322. A general mandate to pursue a certain objective or priority does not suffice. Thus, in *Gonzales v. United States,* 851 F.3d 538, 545–46 (5th Cir. 2017), the Fifth Circuit held that provisions in Forest Service manuals regarding trail maintenance were not sufficiently specific because while they "list[ed] specific goals, . . . [they did] not prescribe a certain course employees must take to reach those goals. In this way, the provisions contain generalized, precatory, or aspirational language that is too general to prescribe a specific course of action for an agency or employee to follow." And in *Freeman v. United States*, 556 F.3d 326, 337 (5th Cir.), *cert. denied*, 558 U.S. 826 (2009), responsibilities stated in a National Response Plan governing relief efforts following Hurricane Katrina did not remove discretion because they "required judgment and choice to make them applicable to specific situations."[1]

---

[1] Also instructive are cases that hold that 18 U.S.C. § 4042 is insufficiently specific to preclude application of the DFE. That statute requires the BOP to "provide for the safekeeping, care, and ... protection ... of [federal inmates]." Courts have uniformly held that this statute, while mandatory, is not specific enough to remove discretion. *See*, *e.g.*, *Spotts v. United States*,

This specificity requirement applies to alleged constitutional violations just as it applies to allegations that a federal statute or regulation was violated.  Courts addressing the applicability of the DFE to allegedly unconstitutional conduct have found that certain constitutional provisions are too general and broad standing alone to remove discretion under the DFE.  *See Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE); *Shivers v. United States*, 1 F.4th 924, 931 (11th Cir. 2021) (plaintiff "points to no federal statute, regulation, or policy that specifically prescribes a course of action that the prison employees here failed to follow.  And, of course, the Eighth Amendment itself contains no such specific directives . . ."), *cert. denied*, 142 S.Ct. 1361 (2022); *McElroy v. United States*, 861 F. Supp. 585, 593 (W.D. Tex. 1994) ("constitutional mandate that eliminates discretion must be specific and intelligible so that the officer knows or should know he loses discretion when the particular circumstances arise which the mandate controls").  Plaintiffs supply no basis for applying the specificity requirement to statutes and regulations but not to the Constitution.

In addition, three different panels of the Fifth Circuit have recognized (in unpublished decisions) that in some cases a provision of the Constitution lacks the requisite specificity to preclude application of the DFE.[2]  *See Garza v. United States*, 161 F. App'x 341, 343–44 (5th

---

613 F.3d 559, 568 (5th Cir. 2010) ("decision not to evacuate fell within the bounds of discretion committed to [BOP] for the administration of prisons under 18 U.S.C. § 4042"); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that [§ 4042] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty.  The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates."); *Nichols v. United States*, No. 21-50368, 2022 WL 989467, *3 (5th Cir. April 1, 2022) (same); *Cohen v. United States*, 151 F.3d 1338 (11th Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999) (same).

[2]  In the Fifth Circuit, unpublished decisions are not treated as precedent but they can be relied upon as persuasive authority.  *See Ballard v. Burton*, 444 F.3d 391, n.7 (5th Cir. 2006).

Cir. 2005) ("the Eighth Amendment's prohibition against cruel and unusual punishment [does not] define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable"); *Campillo v. U.S. Penitentiary Beaumont, Tex.,* 203 F. App'x 555, 557 (5th Cir. 2006) ("We agree with the other circuits that have held that neither § 4042's mandate to protect prisoners nor the [Eighth Amendment's] prohibition against cruel and unusual punishment defines a nondiscretionary course of action specific enough to render the discretionary function exception inapplicable."); *Nichols v. United States,* No. 21-50368, 2022 WL 989467, *3 (5th Cir. April 1, 2022) (same, quoting *Campillo*).[3]

This Court has also previously decided this issue in the Government's favor. *Fabian v. Dunn*, No. 08-cv-269, 2009 WL 2567866, at *8 (W.D. Tex. Aug. 14, 2009) (Rodriguez, J.) (holding that the DFE barred an FTCA claim by unaccompanied minors alleging that the government violated their Fifth Amendment rights in choosing the detention facility where they were abused because, like the Eighth Amendment claim in *Garza*, the Fifth Amendment does not prescribe a specific course of conduct); *see also McElroy*, 861 F. Supp. at 593. In *Fabian*, the Court recognized that "[i]f this Court were to adopt Plaintiffs' argument, it is difficult to conceive what would be left of the discretionary function exception." *Fabian*, 2009 WL 2567866 at *8.

Indeed, several cases cited by Plaintiffs reserved the question of the level of specificity required before a constitutional violation would defeat application of the DFE. Those cases support, rather than undercut, the United States' position that conduct that is later found to be unconstitutional can be protected by the DFE. *See Loumiet v. United States*, 828 F.3d 935, 946

---

[3] *See also* additional cases cited in the United States' opening brief at p. 28–29, n.9.

(D.C. Cir. 2016) ("The question remains whether or to what degree a constitutional mandate must be specific or clearly established to render the discretionary-function exception inapplicable. . .  That would leave for another day the question whether the FTCA immunizes exercises of policy discretion in violation of constitutional constraints that are not already clear."); *Nurse v. United States*, 226 F.3d 996, 1002 & n.2 (9th Cir. 2000) ("we do not make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor.  We hold only that the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply").[4]

Plaintiffs claim that the separation of C.M. and D.V. violated the Fifth Amendment's due process clause, *see* Pls. Resp. at pp. 16–19, which guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law."  On its face, this language does not provide a specific directive that prescribes how government officials must manage minors who are rendered unaccompanied minors when their parents are prosecuted or held in secure detention.[5]  It states only a broad mandate with no specifics as to how the mandate must be implemented.

---

[4] In addition, other cases cited by Plaintiffs did not involve allegations of unconstitutional conduct at all; thus, the language from those cases on which Plaintiffs rely is at best dicta.  *See Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987*); Medina v. United States*, 259 F.3d 220 (4th Cir. 2001*); U.S. Fid. Guar. Co. v. United States*, 837 F.2d 116 (3d Cir. 1988).

[5] Moreover, in order to demonstrate that conduct in question constitutes a substantive due process violation, courts apply the "shock the conscience" test.  However, "the measure of what is conscience shocking is no calibrated yardstick."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018) (noting "indefiniteness" of the "shock the conscience" standard).

And even considering caselaw further explicating the meaning of that clause, the United States respectfully submits that no constitutional right was "clearly established" in the particular context of separations of parents and children apprehended after entering the United States illegally in March 2018.  All of the decisions cited by Plaintiffs not only were rendered after the occurrence of the conduct that forms the basis for their claims, but were decided by district courts, and are therefore irrelevant to the analysis of whether the rights at issue were "clearly established."  *See* Pls. Resp. at 14–16.  For example, the district court in the *Ms. L.* litigation did not issue its preliminary injunction until June 26, 2018, three months after Plaintiffs were separated in March 2018 and less than two weeks before they were jointly repatriated (at their request) to Honduras.  *See Ms. L. v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1144 (S.D. Cal. 2018).  Moreover, even as late as 2019, the court in *Reyna as next friend of J.F.G. v. Hott,* 921 F.3d 204, 210–11 (4th Cir. 2019), stated that it was "unable to find a substantive due process right to family unity in the context of immigration detention pending removal."  *See also Ms. L.*, 310 F. Supp. 3d at 1144 (S.D. Cal. 2018) ("[P]arents and children may lawfully be separated when the parent is placed in criminal custody[.]"); *see also* cases cited in Def. MTD at 28–29.

Finally, in *McElroy v. United States,* 861 F. Supp. 585 (W.D. Tex. 1994), this Court utilized the "clearly established" standard used in official immunity cases to analyze whether the DFE barred the plaintiff's FTCA claim that the government violated the Fourth Amendment. *See id.* at  593 n.15 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982)).  And the Third Circuit in *Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019), likewise applied the "clearly established" standard in the DFE context.  The court reasoned that the allegation of unconstitutional conduct did not defeat application of the DFE because plaintiffs' claimed

constitutional right to be free from the search at issue was not "clearly established."  *See id.* at 364 & n.39 (citing *Harlow*).

In sum, Plaintiffs have failed to identify a specific, mandatory directive that removed the Government's discretion to separate C.M. and D.V. in March 2018 after they illegally entered the U.S. and C.M. was to be prosecuted and securely detained.

### C.    Defendant satisfies the second prong of the DFE test because the decision to detain Plaintiffs separately was susceptible to policy considerations.

Plaintiffs also argue that their separation was not based on policy considerations.  They suggest that there must be a link between their separations and a specific policy objective.  But, as discussed in the United States' opening brief, the applicable test in this regard is whether the Government's actions "were susceptible to policy analysis."  *Gaubert*, 499 U.S. at 325; *see also Spotts*, 613 F.3d at 573 (5th Cir. 2010) ("the proper inquiry under prong two is not whether [the government] *in fact* engaged in a policy analysis when reaching [its] decision but instead whether [its] decision was "susceptible to policy analysis") (quoting *Gaubert*)); *Freeman*, 556 F.3d at 341 (5th Cir. 2009) ("these decisions are clearly susceptible to policy analysis, even if specific decisions were not the result of such a reasoned analysis"); *Andrade v. Chojnacki*, 338 F.3d 448, 457 (5th Cir. 2003) ("applicability of the discretionary function exception does not turn on evidence of the actual decisions made by the defendants, but, rather, on whether the decision is or is not susceptible to policy analysis" (quoting *Gaubert*)).  Plaintiffs do not address this critical distinction.

Plaintiffs dismiss the policy considerations relating to prosecution and detention of noncitizens illegally crossing the border, framing the matter as a "family separation policy."  But the separation followed from the Government's discretionary decisions to (a)

refer C.M. for prosecution for unlawful entry, which rendered him unavailable to provide care for D.V., and made D.V. an unaccompanied child; and (b) detain C.M. in secure adult immigration detention, where D.V. could not be held.  The Government's decisions regarding whether to prosecute noncitizens for violations of criminal immigration statutes and where to detain noncitizens pending immigration proceedings are inextricably linked with the separation of Plaintiffs.  Those decisions are quintessential discretionary judgments susceptible to policy considerations.  *See Peña Arita*, 470 F. Supp. 3d at 686–87 (implementation of policies resulting in separations are discretionary conduct grounded in social, economic, and political policy that courts cannot second-guess).

The separation of C.M. and D.V. was therefore based on the same policies that underlie the Government's prosecution and detention of C.M.  And in addition, decisions regarding how to manage minor children who are rendered unaccompanied by the prosecution of their parents were susceptible to policy considerations such as allocation of limited government resources available to manage the illegal immigration crisis, limited availability of housing facilities and programs suitable for children, and legal requirements applicable to maintaining custody of unaccompanied minors.  Accordingly, even if some or all of those decisions entailed an abuse of discretion, they are not subject to challenge under the FTCA.

## II.   Plaintiffs' Claims Also Are Barred by the FTCA's Exception for Actions Taken in Executing a Statute.

Plaintiffs' arguments relating to the applicability of the FTCA's exception for actions taken while executing a statute are equally unavailing.  Relying primarily on *Welch v. United States,* 409 F.3d 646, 652 (4th Cir. 2005), as well as a series of out-of-circuit district court

decisions that have followed *Welch*,[6] Plaintiffs argue that this exception exempts the United States from tort liability only if a statute or regulation *requires* (rather than merely authorizes) the Federal employee to engage in the challenged conduct.

But even if the Court were to apply *Welch*'s two-part test, the exception still would shield the United States from liability in this case.  Here, as the United States explained in its opening brief, once the discretionary determinations were made to criminally prosecute C.M. for unlawfully entering the United States and to place C.M in secure immigration detention separate from D.V., C.M. became unavailable to care or provide physical custody for D.V., rendering D.V. an unaccompanied alien child; as a result, the Trafficking Victims Protection

---

[6] Plaintiffs assert in a footnote that "[d]istrict courts in this Circuit apply the *Welch* test." Pls. Resp. at 25 n.7.  Only a single district judge sitting within the Fifth Circuit has ever cited *Welch*; that judge, who presided over the protracted consolidated litigation that arose out of the flooding in City of New Orleans and surrounding parishes following Hurricane Katrina, twice cited *Welch* in rulings issued during the course of that litigation.  *See In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656, 667 (E.D. La. 2009) (Duval, J.) (order denying parties' cross-motions for summary judgment); *In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644, 702 (E.D. La. 2009) (Duval, J.) (post-trial findings of fact and conclusions of law).  Notably, all the judgments awarding damages against the United States in the consolidated Hurricane Katrina litigation later were reversed on appeal.  *See In re Katrina Canal Breaches Consol. Litig.*, 696 F.3d 436 (5th Cir. 2012).  In reversing those judgments, the Fifth Circuit ruled that the exception shielded the United States from liability, *id.* at 449–51, obviating any need for it to address the applicability of the exception.  In addition, Plaintiffs cite *In re So. Scrap Material Co., L.L.C.*, 713 F. Supp. 2d 568 (E.D. La. 2010), another case arising out of flooding in New Orleans following Hurricane Katrina.  But *Southern Scrap* (which was decided by a different district judge) did not cite *Welch*.  Instead, in discussing the potential applicability of the exception to counterclaims that had been asserted against the United States by the defendant dry dock owner, *Southern Scrap* cited Judge Duval's post-trial decision in the *Hurricane Katrina Consolidated Litigation.  See id.* at 586 (citing *In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d at 702).  Noting the pendency of the appeal from that decision in the consolidated litigation, however, the court in *Southern Scrap* declined to rule on the applicability of either part of § 2680(a) to the dry dock owner's counterclaims.  *See So. Scrap Material Co.*, 713 F. Supp. 2d at 587.  As noted, the Fifth Circuit subsequently reversed all the judgments that had been entered against the United States in the consolidated litigation.

Reauthorization Act (TVPRA) required that D.V. be transferred to the care of the Office of Refugee Resettlement (ORR) within 72 hours.  *See* 8 U.S.C. § 1232(b)(3).

After D.V. was transferred to ORR custody, moreover, other detailed statutory and regulatory provisions became applicable to him, including 8 U.S.C. § 1232(c)(3)(A), which prohibits placement of an unaccompanied child with a person unless the Secretary of Health and Human Services first makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being.  In this case, HHS determined that the regulation precluded D.V.'s reunification with C.M. not only while he was serving his criminal sentence, but also after he was transferred back to immigration custody after he completed serving his sentence and was detained in secure adult detention facilities pending his expedited removal from the United States.  HHS reached that determination because it concluded that a parent who was detained in a secure adult immigration facility pending his expedited removal from the United States was not capable of providing for his child's physical and mental well-being.

Plaintiffs are wrong to assert that the preliminary injunction, which was issued in *Ms. L. v. U.S. Customs & Immigration Enf't*, 310 F. Supp. 1133 (S.D. Cal. 2018), less than two weeks before C.M. and D.V. were reunited and jointly repatriated to Honduras, counsels a different result.  In issuing this preliminary injunction, the *Ms. L.* district court concluded that separating parents from their children was permissible in those instances in which the parent (like C.M.) was criminally prosecuted, but that the government's failure to promptly reunite such parents with their children after the parents finished serving their sentences was conscience shocking and likely violated the due process clause of the United States Constitution's Fifth Amendment.  But even if the *Ms. L* ruling had been directly applicable to the facts here, this subsequent ruling would not nullify the FTCA's exception for the prior government actions that were taken in

executing the TVPRA.  *See Welch v. United States*, 409 F.3d at 650, 652 (affirming the district

court's dismissal of the plaintiff's FTCA suit and specifically rejecting the plaintiff's argument

"that an unconstitutional statute can never be said to have been executed with 'due care'"); *see*

*also Dupree v. United States*, 247 F.2d 819, 824–25 (3d Cir. 1957) (affirming dismissal of

plaintiff's FTCA suit pursuant to the exception even though the regulations at issue had been

held to be invalid in an earlier action for declaratory and injunctive relief); *Doe v. Stephens*, 851

F.2d 1457, 1462–63 (D.C. Cir. 1988) (concluding that exception barred plaintiff's claim even

though court of appeals rejected government's reading of Veterans Records Act and agency's

implementing regulations; government's failure to anticipate rejection of its interpretation of

statute and regulations was not a basis for concluding federal employees failed to exercise due

care); *Nwozuzu v. United States*, 712 F. App'x 31, 33 (2d Cir. 2017) (exception barred plaintiff's

claim for his unlawful detention; government's failure to anticipate that court of appeals would

reject its interpretation of derivative citizenship statute was not a basis for concluding that federal

employees failed to exercise due care either by erroneously interpreting statute or by incorrectly

determining plaintiff's status by applying that erroneous interpretation).

Indeed, the two parts of 28 U.S.C. § 2680(a) work in tandem in such circumstances.[7]

Thus, the determination that D.V. was "unaccompanied" within the meaning of the TVPRA is a

---

[7] Referring to 28 U.S.C. § 2680(a), which comprises both the first clause of subsection
(a) and the DFE (the subsection's second clause), the Fifth Circuit has explained:

> [Subsection (a)] reflects a congressional intent to "prevent judicial 'second-
> guessing' of legislative and administrative decisions grounded in social,
> economic, and political policy through the medium of an action in tort."  *United*
> *States v. Varig Airlines*, 467 U.S. 797, 814 (1984).  This congressional intent
> applies to both clauses of the subsection, because the first clause exempts from
> judicial scrutiny the decisions of legislative bodies and the second clause exempts
> the decisions of government employees at every level, acting in the exercise of
> their discretion.

decision that also is covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" likewise is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482–83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied minor children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("[I]nterpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA."); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (determining whether conduct constituted "crime of moral turpitude" under applicable statute was "a quintessential exercise of [agency's] broad discretion").

Here, C.M. was prosecuted and transferred to the custody of the United States Marshals Service, and, after serving his sentence, was then sent to an adult immigration detention facility. In those circumstances, the FTCA deprives this Court of jurisdiction to review the officials' determination that D.V. should have been deemed unaccompanied and thus transferred to the custody of the ORR.

**III.    Plaintiffs' Claims Are Not Actionable Since There Is No Private Person Analogue.**

Plaintiffs' claims also fail because the governmental conduct that Plaintiffs challenge has no private analogue. Defendant does not argue, as Plaintiffs suggest, that the conduct at issue is "uniquely governmental." Rather, as the United States established in its opening brief, there is no private analogue because Plaintiffs' claims arise out of the exercise of federal statutory authority that only the government possesses. This is especially true when, as here, the statutory authority being exercised pertains to enforcement of federal immigration laws—namely, those

---

*Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990).

relating to whether and where to detain noncitizens pending immigration proceedings. *See Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign.").

Plaintiffs do not dispute that C.M. was lawfully prosecuted and held in criminal custody or secure adult immigration detention pending immigration proceedings. Thus, Plaintiffs' claims are essentially a challenge to *where* and *with whom* noncitizens are detained, and whether, when, and with whom to remove noncitizens. Such decisions are made pursuant to federal statutory authority and are in the sole province of the federal government; there is no private person counterpart.

Plaintiffs argue that Texas cases (and an Arizona case) involving nursing home personnel provide a private analogue to the conduct in this case. *See* Pls. Resp. at 30. But cases involving allegations of professional or medical negligence in nursing homes are far afield from the instant case. The context of providing care to persons in nursing homes and a government actor exercising statutory authority in executing the immigration laws are not analogous.

In short, Plaintiffs have not identified any law to support the notion that private persons may be held liable in promulgating or executing federal law and policy.

## IV.    Plaintiffs Fail to State a Claim.

Beyond the jurisdictional defects in Plaintiffs' Complaint, Plaintiffs also fail to state a claim for battery, intentional infliction of emotional distress, and negligence under Texas law. As Plaintiffs do not oppose dismissal of their claims for lack of consortium and abuse of process, those claims are not addressed in this Reply. Pls. Resp. at p. 31, n.11.

### A.    Because Plaintiffs' allegations do not show that any CBP officer's use of force against C.M. as he attempted to evade inspection was objectively

**unreasonable, Plaintiffs have not pleaded a battery claim that survives Texas's use-of-force privilege.**

Plaintiffs argue that they have pleaded sufficient facts in support of their battery claim to survive a motion to dismiss at the pleading stage. Plaintiffs' argument is unpersuasive for two reasons. First, *Davila v. United States*, the leading case cited in support of Defendant's motion, was also decided at the pleading stage. And second, the Court is entitled to take judicial notice of the fact that C.M. was apprehended while attempting to run through the vehicular lanes into the United States. Taking the facts alleged in the Complaint—that C.M. was forced to the ground and struck on the neck—as true, along with these facts of which the Court may take judicial notice, Plaintiffs have not alleged an objectively unreasonable use of force. Thus, their claim should be dismissed.

Plaintiffs attempt to distinguish *Davila* by arguing that the Court cannot review the "totality of the circumstances" at the pleading stage. *See* Pls. Resp. at p. 33, n.12. But *Davila* affirmed the granting of a 12(b)(6) motion to dismiss at the pleading stage. There, National Park Service officers approached the plaintiffs' car with guns drawn, handcuffed plaintiffs, and forced plaintiffs to kneel during traffic stop. *Davila v. United States*, 713 F.3d 248, 260 (5th Cir. 2013). The Fifth Circuit held that the use of force in this manner was not excessive or objectively unreasonable "in light of the totality of the circumstances at the time of the traffic stop." *Id.* Plaintiffs' allegation of subjective "malice" does not render it objectively unreasonable to use force to prevent two grown men from running through the car lanes into the United States at a port of entry. *See* Pls. Resp. at 35. The remaining allegations do not show an unreasonable use of force, particularly when taken in context provided by other public documents.

The United States has not relied on any "hotly disputed" statements of law enforcement in making these arguments. *See id.* at 37 ("Here, the statements of law enforcement personnel

16

are hotly disputed, and were not attached to Plaintiff's complaint.").  Instead, the United States

refers to Plaintiff's criminal conviction and order of removal, matters of which the Court may

take judicial notice.   Judicial notice is not limited to laws, treaties, and regulations, as Plaintiffs

argue; the Court may consider these materials without transforming Defendant's motion into a

motion for summary judgment.  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("it

is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public

record"); *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) (taking judicial notice of the decisions

of the Board of Immigration appeals, recognizing the court had "the power, in fact the obligation,

to take judicial notice of the relevant decisions of courts and administrative agencies"); *see also*

*King v. Life School*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011) ("Even though the EEOC

charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public

record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested.");

*see also* Fed. R. Evid. 201 (providing for judicial notice of facts that are not subject to reasonable

dispute because they are generally known within the jurisdiction or can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned).  The Court may take

judicial notice of these facts supporting Defendant's arguments, which are set out in public

records and administrative decisions, the authenticity of which are not contested.

Specifically, the Court may take judicial notice of the fact that Plaintiff was charged with

and pleaded guilty to attempting to enter the United States by eluding inspection.  *See* ECF 20-

10; *see also* ECF No. 20-12, also attached to ECF No. 22.  C.M. pleaded guilty to a criminal

complaint alleging that he was running through the vehicular primary lanes at the time he was

apprehended.  *See* ECF No. 20-8, also attached to ECF No. 22.  Plaintiff cannot reasonably

dispute that he was attempting to evade inspection by alleging that he claimed asylum from CBP

officers "as soon as he encountered them" and was otherwise compliant.  *See* Pls. Resp. at 38

(suggesting the plaintiff was "beaten" as a "compliant individual requesting asylum at the

border").  Indeed, he is estopped from contesting the facts surrounding his guilty plea.  *United*

*States ex rel. Wheeler v. Union Treatment Ctrs.*, LLC, No. SA-13-CA-4-XR, 2019 WL 571349,

at *3 (W.D. Tex. Feb. 12, 2019) (Rodriguez, J.) (holding that a defendant is estopped by his

guilty plea from re-litigating an issue in a subsequent civil case based on the same facts) (citing

*Brazzell v. Adams*, 493 F.2d 489 (5th Cir. 1974) (collateral estoppel applies to facts in issue to a

defendant's criminal conviction and applies equally where a prior criminal adjudication was

based on a jury verdict or a guilty plea)); *Jenkins v. Town of Vardaman*, 899 F. Supp. 2d 526, 537

(N.D. Miss. 2012); *Fryar v. Stacks*, No. 4:15-cv-792, 2016 U.S. Dist. LEXIS 96845 (E.D. Tex.

May 13, 2016).

 As the Fifth Circuit has acknowledged, in the context of an international border crossing,

the "Government's interest in preventing the entry of unwanted persons and effects is at its

zenith." *Angulo v. Brown*, 978 F.3d 942, 951 (5th Cir. 2020) (citing *United States v. Flores-*

*Montano*, 541 U.S. 149, 152 (2004)).  With their children in tow, C.M. and his brother attempted

to evade inspection by running through the vehicle primary lanes at the port of entry into the

United States, and officers used force to prevent their illegal entry and take them into custody.

*See* ECF No. 20-8 (Criminal Complaint, to which Plaintiff pleaded guilty), also attached to ECF

No. 22.  C.M. was aware that his actions were in violation of law at the time.  *Id.*

 Of course, the crime of evading entry would not render all uses of force objectively

reasonable.  The question is whether Plaintiff has alleged facts sufficient to show an

unreasonable use of force *in this circumstance*.  Plaintiff cannot meet his pleading burden by

omitting key circumstances of his arrest and alleging that some force was used against him.

Taken together with the facts essential to C.M.'s criminal conviction, the Complaint does not allege any objectively unreasonable use of force. Thus, as in *Davila*, Plaintiff C.M.'s battery claim should be dismissed based on the Texas's use-of-force privilege. *See Davila*, 713 F.3d at 260.[8]

### B. Because Plaintiffs' separation followed a decision to charge C.M. with attempting to elude inspection, no intentional infliction of emotional distress claim is available to him.

In their Response, Plaintiffs argue that "a claim for intentional infliction of emotional distress under the FTCA is sufficient where the agents' actions were motivated by malice," citing the Second Restatement and Ninth Circuit case law. Pls.' Resp. at p. 37. This argument fails. Malice is insufficient to show extreme and outrageous behavior under both the Second Restatement and Texas law, particularly given Texas's strong public policy in favor of criminal enforcement.

When the Texas Supreme Court recognized a cause of action for intentional infliction of emotional distress, it "adopted the parameters of that tort set forth in Restatement 2d of Torts § 46(1)." *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215–16 (Tex. 1999). Rather than supporting Plaintiffs' position, the Second Restatement makes clear that it is not enough to show that a

---

[8] More broadly, Plaintiffs argue that their claims based on their separation do not challenge privileged conduct because privileges are based on statutes, and the United States has identified no statutory basis for recognizing a privilege for such conduct. But as the United States discussed in its opening brief, the TVPRA required the separation of D.V. from C.M. when the latter was criminally prosecuted for attempting to unlawfully enter the United States and placed in secure immigration detention separate from D.V., and the TVPRA precluded their reunification while C.M. was serving his criminal sentence and thereafter while he was detained in adult immigration facilities pending his expedited removal from the United States. The facilities in which C.M. served his sentence and later was detained pending his removal were not suitable for housing minors, necessitating his continued separation from D.V. *Cf.* Restatement of Torts (Second), § 700 cmt. *e* (noting that while private citizens have no privilege to remove child from "improper surroundings," persons who are authorized by law to do so are protected by privilege when acting within the scope of their authority).

defendant "has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice[.]'" Restatement 2d Torts, § 46 (Outrageous Conduct Causing Severe Emotional Distress), cmt (d).  This is also the law in Texas: it is not enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Brewerton*, 997 S.W.2d at 216.  Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation and citation omitted).

The only Texas case cited in Plaintiffs' Response regarding the IIED claim is *Fulton v. Bed Bath & Beyond, Inc.*, 2006 WL 8436984, at *3 (N.D. Tex. Oct. 30, 2006).  There, an employee claimed that she was accused by her employer of stealing from the company, and that in the course of the investigation, her manager called her husband and advised him that he should seek a divorce. *Id.* at *1.  The court held that while the complaint alleged that the employer "conducted a brutal interrogation that involved belligerent conduct, the blocking of a door, yelling, belittling, and calling [the employee] a thief," this conduct did not "exceed all possible bounds of decency" and is not "regarded as atrocious." *Id.* at *3 (internal quotations omitted).  Thus, IIED claims based on the interrogation failed to state a claim.  Turning to the IIED claim based on the manager's suggestion that the husband divorce the wife, the court did not specifically consider whether this was extreme or outrageous conduct, but instead rejected the defendant's argument that this claim was duplicative of the plaintiff's defamation claim. *Id.* at *3.  This case has no bearing on the events alleged here.

Even if the "destruction of a family relationship" could satisfy the necessary showing of

extreme and outrageous conduct, as Plaintiffs argue, impacts to familial relationships resulting from successful criminal and immigration enforcement cannot. Here, C.M. and D.V. were reunited and removed to Honduras together, as they had requested, after Plaintiff C.M.'s one-month criminal detention and three-month mandatory civil immigration detention. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) & (iii)(IV); Compl. ¶ 2 (alleging asylum-seeking status). D.V. was not subject to mandatory detention and was instead released into foster care pending coordination of Plaintiffs' removal. Far from demonstrating extreme and outrageous conduct, Plaintiffs' separation and subsequent reunification complied with federal criminal and immigration statutes. Although every criminal and immigration detention has negative impacts on the family unit, Plaintiffs fail to identify any case holding that the separation of a parent from his child in connection with a criminal conviction and/or immigration enforcement proceeding is extreme or outrageous under Texas law.

The other cases cited in Plaintiffs' Response to support the IIED claim are inapposite. *Ms. L* did not involve tort claims. *Ms. L. v. U.S Immigr. & Customs Enf't* ("ICE"), 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019), and *enforcement granted in part, denied in part sub nom. Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020). Instead of supporting their claim, Plaintiffs' reliance on *Ms. L* shows that they are trying to convert potential constitutional claims into a tort action under Texas law. Such constitutional tort claims are not actionable under the FTCA. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71–72 (2001); *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."). *A.I.I.L.* is also inapposite because it allowed alleged "malice" to satisfy the standard of extreme and outrageous conduct, which is insufficient under both Texas law and the Second Restatement.

*See A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *7 (D. Ariz. Mar. 31, 2022).

Plaintiffs' emphasis on malice underscores that they have not alleged an actionable intentional infliction of emotional distress claim under Texas law.  Instead, the gravamen of Plaintiffs' separation-based claims is abuse of process or malicious prosecution, which they say was brought about maliciously and for the purpose of causing them to relinquish their claims for asylum.  Compl. Part G, ¶¶ 73–76 ("The Government's Separation of C.M. and D.V. Was Unconstitutional, Unlawful, and Designed to Force Them to Abandon Their Asylum Claims."). But plaintiffs cannot satisfy the requirements for those claims: had Plaintiffs pleaded a malicious prosecution claim—the claim available under Texas law when a criminal prosecution or civil action is brought about by improper malice—they would be required to show that the proceedings at issue terminated in their favor.  *Thrift v. Hubbard*, 974 S.W.2d 70, 77–78 (Tex. App.—San Antonio 1998, pet. denied); *French v. French*, 385 S.W.3d 61, 72 (Tex. App.—Waco 2012, pet. denied) ("[T]he essential question seems to be whether 'the proceedings have terminated in favor of the accused.'") (quoting Restatement (Second) of Torts § 653(b) (1977)). Plaintiffs cannot do so, given the outcome of C.M.'s criminal proceedings and Plaintiffs' immigration proceedings.  Likewise, to prove abuse of process, Plaintiffs would be required to demonstrate that legal process had been used for an ulterior motive, as well as special damages. But Plaintiffs have now waived this this claim in their Response.  *See* Pls. Resp. at p. 31, n.11. (These claims may also be barred under the FTCA's intentional torts exceptions.  *See* 28 USC § 2680(h).)  Plaintiffs cannot recast their allegations into a claim of intentional infliction of emotional distress to avoid the limits placed on other torts by Texas law.  *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) ("Where the gravamen of a plaintiff's

complaint is really another tort, intentional infliction of emotional distress should not be available.") (collecting cases).

*Martinez v. English* is instructive, as this case shows that it does not matter whether a claim for malicious prosecution or abuse of process is *actually available* to a plaintiff; if the gravamen of the claim is the malicious use of criminal and civil process, the gap-filler claim of intentional infliction of emotional distress is not available.  267 S.W.3d 521, 527 (Tex. App.— Austin 2008, pet. denied).  Analyzing the evidence supporting a jury verdict in favor of the plaintiff, the Austin Court of Appeals found that the plaintiff's claim for malicious prosecution failed because the plaintiff could not show that the proceedings terminated in his favor.  *Id.* at 527–28.  Similarly, there was no evidence to support the claim for abuse of process because the plaintiff failed to show that any process was used improperly after it was issued.  *Id.* at 528–29.

Even though the claims for malicious prosecution and abuse of process failed, the court held that there was no claim for intentional infliction of emotional distress available to plaintiff. The plaintiff's evidence showed that at the time of his arrest, officers put him on the ground and handcuffed him while his young daughter was curled up in the truck, and he feared they would take her into custody and put her into child protective services overnight.  *Id.* at 530.  The plaintiff testified that next to his mother's death, it was the worst moment of his life.  *Id.*  Still, the court held that because the damages plaintiff sought "relate[d] to his prosecution and arrest and the aftermath," his claim was one for malicious prosecution and he could not "also maintain a claim for intentional infliction of emotional distress."  *Id.* at 531.  The court reversed the jury verdict in favor of the plaintiff and rendered judgment in favor of the defendant.

Where, as here, a parent is separated from his child due to the parent's criminal prosecution and/or immigration proceedings, the decision to separate is a consequence of those

proceedings that cannot amount to intentional infliction of emotional distress under Texas law. For these reasons and the reasons stated in the United States' motion to dismiss, Plaintiffs' separation-based intentional infliction of emotional distress claims should be dismissed.

No other facts alleged in the Complaint give rise to a plausible right of recovery for intentional infliction of emotional distress such that a private person acting under the same circumstances would be liable. This claim should be dismissed.

### C. The Response confirms that Plaintiffs' negligence claim is an impermissible claim for negligent infliction of emotional distress and otherwise conclusory.

In their Response, Plaintiffs assert that the government breached a duty of care to Plaintiffs in two respects: (1) "by prolonging their separation without justification"; and (2) by "failing to protect D.V. from physical and emotional abuse at the facilities where he was housed," which "proximately caused their emotional and physical injuries." Pls. Resp. at 42. But Plaintiffs' "prolonged separation" did not cause them any *physical* injuries. And Plaintiffs do not allege facts to support their allegation that the United States "fail[ed] to protect" D.V. from physical and emotional abuse. For these reasons, Plaintiffs' negligence claims should be dismissed.

### 1. Plaintiffs cannot recast their claims for infliction of emotional distress as general negligence claims in an attempt to avoid the bar against claims for negligent infliction of emotional distress.

Plaintiffs do not allege that the decision to separate C.M. from D.V. pending their respective criminal and immigration proceedings directly caused them physical injuries.[9] Instead, they argue that the separation caused them severe emotional distress. *See* Pls. Resp. at pp. 11–12. The United States has already addressed grounds for dismissing Plaintiffs' claim for

---

[9] Plaintiffs' allegation that the United States failed to protect D.V. from physical abuse by third parties is not an allegation of physical injury caused by the separation itself and is separately addressed.

intentional infliction of emotional distress based on Plaintiffs' separation.  Plaintiffs cannot then bring a general negligence claim based on the same conduct in an attempt to avoid Texas's bar on negligent infliction of emotional distress claims.

This conclusion is supported by Texas caselaw.  In *Smith v. Tilton*, for example, the Dallas Court of Appeals affirmed the dismissal of a plaintiff's negligence and gross negligence claims where a "comparison" of the plaintiff's pleadings made clear that the claims of negligence and gross negligence arose from the "same facts" alleged in support of a previously dismissed claim for negligent infliction of emotional distress.  *Smith v. Tilton*, 3 S.W.3d 77, 89 (Tex. App.—Dallas 1999, no pet.).  This principle is not limited to claims for emotional distress resulting from an alleged false arrest or assault, as Plaintiffs suggest.  Pls. Resp. at 41.

This conclusion is also supported by broader Texas law discouraging artful pleading.  It is well established that under Texas law, "a plaintiff may not recast his claim in the language of another cause of action to avoid limitations or compliance with mandatory statutes or to circumvent existing case law contrary to the plaintiff's position." *Brumfield v. Williamson*, 634 S.W.3d 170, 209 (Tex. App.—Houston [1st Dist.] 2021, pet denied) (collecting cases showing various examples).  The same is true under federal law.  *Garcia v. United States*, 776 F.2d 116, 118 (5th Cir.1985) (FTCA's assault and battery exception cannot be circumvented by labeling his claim as one for "negligence").  Plaintiffs cannot recast their separation-based claims as general negligence claims in an attempt to avoid Texas's prohibition on negligent infliction of emotional distress claims.  Thus, any negligence claimed based on Plaintiffs' "prolonged separation" should be dismissed.

> ### 2. Plaintiffs fail to state a claim based on any alleged negligence in failing to protect D.V. from abuse while he was in custody.

Plaintiffs do not identify any duty under Texas law that would be breached by Plaintiffs'

separation.  Instead, in an attempt to argue that the United States breached a duty owed to

Plaintiffs in this case, Plaintiffs cite multiple cases recognizing, based on some special

relationship between the parties, a duty to protect a plaintiff from *physical injuries*.[10]  For

example, in *Browning v. Graves*, a Texas court recognized a duty on the part of a jailer to protect

one inmate from another.  *Browning v. Graves*, 152 S.W.2d 515 (Tex. Civ. App.—Fort Worth

1941, writ ref'd).  Similarly, *St. Paul* described a lower-court judgment against a nursing home

where a nursing home patient developed ulcers while in the nursing home's care, requiring

hospitalization and surgery.  *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193

F.3d 340, 341 (5th Cir. 1999).  None of the cases cited by Plaintiffs recognize a general duty to

protect individuals in custodial care from emotional distress, as Plaintiffs would suggest.

 The only physical injury described in Plaintiffs' Response relates to Plaintiff D.V.'s claim

that Defendant acted negligently by failing to protect him from physical and emotional abuse at

the facilities where he was housed.  This claim is based on one paragraph in Plaintiff's

Complaint, which does not contain sufficient factual allegations to support a plausible claim for

relief.  *See* Compl. ¶ 63.

 Plaintiffs do not identify who is alleged to have committed the abuse.  If the alleged

abuse was committed by a federal employee, the claim would likely be barred by the assault and

battery exceptions to the FTCA's limited waiver of sovereign immunity.  *See Garcia v. United

States*, 776 F.2d 116 (5th Cir. 1985).  If the abuse was committed by a non-federal employee

working at an ORR-contracted facility, the claim might be barred by the FTCA's contractor

exception.  The Court would lack jurisdiction over such a claim.  *See Walding v. United States*,

---

[10] This does not constitute an exception to Texas's refusal to recognize a claim for negligent
infliction of emotional distress.  As C.M. does not allege any physical injuries outside his claim
for battery, Plaintiffs' argument cannot apply to him.

955 F. Supp. 2d 759, 811 (W.D. Tex. 2013) (Rodriguez, J.) (holding that independent contractor exception barred claim that United States negligently failed to ensure the health and safety of the minors detained at a minor detention facility).  Absent allegations of who committed the abuse, or at least where it occurred, Plaintiffs have not stated a plausible claim for negligence.

As to claims of "physical and verbal" attacks committed by "other children at the facility," Plaintiffs have not alleged facts sufficient to show a plausible right to relief based on the conduct of any federal employee.  Plaintiffs have not described the physical attacks allegedly committed, which federal employees should have intervened to protect Plaintiff, or how they allegedly breached a duty owed.  The conclusory allegations in the Complaint are insufficient to state a plausible claim for negligence against the United States.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to dismiss for lack of jurisdiction and/or failure to state a claim.

<div style="margin-left:40%">

Respectfully submitted,

Ashley C. Hoff
United States Attorney

By:     */s/ Faith Johnson Lowry*
Faith Johnson Lowry
Assistant United States Attorney
601 NW Loop 410, Suite 600
San Antonio, Texas 78216-5597
Texas Bar No. 24099560
faith.johnson@usdoj.gov
Tel. (210) 384-7355
Fax. (210) 384-7358

Attorneys for Defendant

</div>